15-1552

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

PRINCETON DIGITAL IMAGE CORPORATION,

Plaintiff - Appellant,

v.

HEWLETT-PACKARD COMPANY, FUJIFILM NORTH AMERICA CORPORATION,

Defendants - Appellees.

FUJIFILM NORTH AMERICA, fka Fujifilm, USA, Inc.,

Defendant.

---

On Appeal From the United States District Court for the Southern District of New York in No. 1:12-cv-00779-RJS, Hon. Richard J. Sullivan

## RESPONSE BRIEF OF APPELLEES HEWLETT-PACKARD COMPANY AND FUJIFILM NORTH AMERICA CORPORATION

---

Steven J. Routh
Sten A. Jensen
Diana Szego Fassbender
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1152 15th Street, NW
Washington, D.C. 20005-1706
202.339.8500

*Attorneys for Defendant-Appellee*
*FUJIFILM North America Corporation*

Sean C. Cunningham
Erin P. Gibson
Stanley J. Panikowski
David R. Knudson
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
619.699.2700

Brian Erickson
DLA PIPER LLP (US)
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
512.457.7059

*Attorneys for Defendant-Appellee*
*Hewlett-Packard Company*

# **CERTIFICATE OF INTEREST**

PRINCETON DIGITAL IMAGE CORPORATION v. HEWLETT-PACKARD
COMPANY, FUJIFILM
NORTH AMERICA CORPORATION
No. 15-1552

Pursuant to Federal Circuit Rule 47.4, counsel for Appellee Hewlett-Packard
Company certifies the following:

1.    The full name of every party or amicus represented by me is:

    Hewlett-Packard Company

2.    The name of the real party in interest (if the party named in the caption is not
the real party in interest) represented by me is:

    N/A

3.    All parent corporations and any publicly held companies that own 10 percent
or more of the stock of the party or amicus curiae represented by me are:

    None

4.    The names of all law firms and the partners or associates that appeared for
the party or amicus now represented by me in the trial court or agency or are
expected to appear in this court are:

    DLA Piper LLP (US), Sean Cunningham, Brian Erickson, Erin Gibson,
Stanley Panikowski, David Knudson, Amy Walters

    Chao Hadidi Stark & Barker, Bruce J. Barker

Dated:  September 9, 2015

                             */s/ Sean C. Cunningham*
                             Sean C. Cunningham

## <u>CERTIFICATE OF INTEREST</u>

PRINCETON DIGITAL IMAGE CORPORATION v. HEWLETT-PACKARD COMPANY, FUJIFILM
NORTH AMERICA CORPORATION
No. 15-1552

Pursuant to Federal Circuit Rule 47.4, counsel of record for Appellee FUJIFILM North America Corporation certifies the following:

1.    The full name of every party or amicus represented by me is:

FUJIFILM North America Corporation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

FUJIFILM North America Corporation is a wholly-owned subsidiary of FUJIFILM Holdings America Corporation, which in turn is a wholly-owned subsidiary of FUJIFILM Corporation.  FUJIFILM Corporation is a wholly-owned subsidiary of FUJIFILM Holdings Corporation, a publicly held corporation in Japan that has a greater than 10% ownership interest in FUJIFILM Corporation.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Orrick, Herrington & Sutcliffe LLP – Steven J. Routh, Sten A. Jensen, John R. Inge, Diana Szego Fassbender, Christopher Higgins, Clifford R. Michel

Dated:  September 9, 2015

/s/ Steven J. Routh
Steven J. Routh

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ...................................................................ix

INTRODUCTION .............................................................................................1

ISSUES PRESENTED........................................................................................2

STATEMENT OF THE CASE.............................................................................3

    A.    The Parties And Procedural History Of The Litigation .......................4

    B.    The Microsoft Settlement...................................................................5

    C.    The District Court's Opinion And Order Granting Defendants' Motion For Summary Judgment .........................................................9

SUMMARY OF ARGUMENT ..........................................................................11

STANDARD OF REVIEW ...............................................................................13

ARGUMENT ..................................................................................................14

I.    PDIC WAIVED ITS PRINCIPAL ARGUMENTS ON APPEAL BY FAILING TO PRESENT THEM TO THE DISTRICT COURT ................14

    A.    A Party Cannot Raise On Appeal Arguments That Were Not Fairly Presented To The District Court..............................................14

    B.    PDIC's Opposition To Defendants' Motion For Summary Judgment Rested On Arguments That PDIC Has Abandoned On Appeal..............................................................................................15

    C.    PDIC Cannot Raise New Arguments For The First Time On Appeal..............................................................................................16

    D.    Having Failed To Comply With Local Rule 56.1 Or To Cite Record Materials As Required by FRCP 56(c), PDIC Cannot Now Dispute Facts Established by Defendants' Moving Papers.......18

II.    THE DISTRICT COURT CORRECTLY RULED THAT THE ACCUSED PRODUCTS ARE A "COMBINATION, HYBRID OR AGGREGATION" THAT "INCORPORATE OR USE" A MICROSOFT OFFERING..................................................................21

    A.    The Accused Products Incorporate Or Use Microsoft ".cat" Files .................................................................................................22

1.  Defendants offered uncontested testimony and documentary evidence that Microsoft provides the .cat files to Defendants .................................................23

2.  PDIC's new argument that the .cat files are not "Offerings" of Microsoft was waived and is contrary to the terms of the Microsoft Settlement......................................25

3.  The district court properly rejected PDIC's argument that a certain portion of the Accused Products must include the Microsoft .cat files ............................................26

B.  The Accused Products Incorporate Or Use The Microsoft FAT32 File System .........................................................29

C.  The District Court Properly Concluded That Each Of The Accused Products Is A "Combination, Hybrid Or Aggregation" That Incorporates Or Uses A Microsoft Offering.............................33

D.  There Is No Basis For PDIC's Argument That A Microsoft Offering Requires A Microsoft Proprietary Or Ownership Interest ..........................................................36

E.  The District Court Correctly Concluded That HP's Snapfish Service Is A "Combination, Hybrid Or Aggregation" That Incorporates Or Uses A Microsoft Offering ......................................38

III.  PDIC HAS NOT IDENTIFIED ANY ERROR WITH RESPECT TO THE DISTRICT COURT'S TREATMENT OF EXTRINSIC EVIDENCE ...............................................................40

A.  PDIC's Extrinsic Evidence Arguments Are Vague, Ambiguous, and Contrary To Washington Law......................................40

B.  The District Court Did Not "Misapply" Extrinsic Evidence .............44

IV.  DEFENDANTS SUBMITTED EVIDENCE OF ADDITIONAL MICROSOFT OFFERINGS THAT ARE INCORPORATED OR USED BY THE ACCUSED PRODUCTS, WHICH PROVIDE ALTERNATIVE GROUNDS FOR AFFIRMANCE ................................46

V.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING PDIC'S REQUEST FOR ADDITIONAL DISCOVERY .....48

A.  This Court Reviews The District Court's Determination Under Rule 56(d) For An Abuse Of Discretion ...........................................49

B.       PDIC Was Provided A Full And Fair Opportunity To Conduct Discovery Into The Accused Products And Defendants' License Defense ................................................................................................50

C.       The Facts Concerning The Incorporation And Use Of Microsoft Technology In The Accused Products Were Undisputed .................56

D.       Defendants' Response To PDIC's Rule 56(d) Affidavit Does Not Prove PDIC's Need For Additional Discovery ...........................58

CONCLUSION .....................................................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

### FEDERAL CASES

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. 2013) ........................................................56

*In re Agent Orange Prod. Liab. Litig.*,
  517 F.3d 76 (2d Cir. 2008) .................................................................14

*Am. Express Co. v. Goetz*,
  515 F.3d 156 (2d Cir. 2008) ...............................................................14

*Baron Services, Inc. v. Media Weather Innovations LLC*,
  717 F.3d 907 (Fed. Cir. 2013) ...........................................................59

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) ...........................................................41

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
  648 F.2d 97 (2d Cir. 1981) .................................................................58

*Costello v. New York State Nurses Ass'n*,
  783 F. Supp. 2d 656 (S.D.N.Y. 2011) .............................................18, 25, 31, 32

*Glaxo Group Ltd. v. TorPharm, Inc.*,
  153 F.3d 1366 (Fed. Cir. 1998) .........................................................48

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
  527 F.3d 1318 (Fed. Cir. 2008) ...................................................*passim*

*Gualandi v. Adams*,
  385 F.3d 236 (2d Cir. 2004) ...............................................................57

*Hudson River Sloop Clearwater, Inc. v. Department of Navy*,
  891 F.2d 414 (2d Cir. 1989) ...............................................................40, 50, 57

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
  616 F.3d 1267 (Fed. Cir. 2010) .........................................................48

*Kraft v. City of New York*,
696 F. Supp. 2d 403 (S.D.N.Y 2010) ....................................................47

*Meloff v. New York Life Ins. Co.*,
51 F.3d 372 (2d Cir. 1995) ...............................................................59

*Miller v. Wolpoff & Abramson LLP*,
321 F.3d 292 (2d Cir. 2003) ........................................................51, 52

*Muller v. Anderson*,
501 F. App'x 81 (2d Cir. 2012) ................................................. 49-50

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2d Cir. 1994) .............................................................49

*Qualls v. Blue Cross of Cal., Inc.*,
22 F.3d 839 (9th Cir.1994) ...............................................................57

*Risco v. McHugh*,
868 F. Supp. 2d 75 (S.D.N.Y. 2012) .................................................20

*Sage Products, Inc. v. Devon Industries, Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ................................................*passim*

*Sage Realty Corp. v. Ins. Co. of N. Am.*,
34 F.3d 124 (2d Cir. 1994) ...............................................................50

*Seneca Beverage Corp. v Healthnow New York, Inc.*,
200 F.App'x 25 (2d Cir. 2006) .........................................................52

*Senno v. Elmsford Union Free Sch. Dist.*,
812 F.Supp.2d 454 (S.D.N.Y.2011) .................................................20

*Serdarevic v. Advanced Med. Optics, Inc.*,
532 F.3d 1352 (Fed. Cir. 2008) ........................................................49

*SmithKline Beecham Corp. v. Apotex Corp.*
439 F.3d 1312 (Fed. Cir. 2006) ..................................................16, 41

*Spectra Corp. v. Lutz*,
839 F.2d 1579 (Fed. Cir. 1988) ........................................................56

*Springs Window Fashions LP v. Novo Industries, L.P.*,
  323 F.3d 989 (Fed. Cir. 2003) ..............................................................56

*Sutera v. Schering Corp.*,
  73 F.3d 13 (2d Cir. 1995) ...............................................................51, 52

*Union Carbide Corp. v. Exxon Corp.*,
  77 F.3d 677 (2d Cir. 1996) ...................................................................24

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir.1991) .................................................................41

*Vargas v. Transeau*,
  514 F. Supp. 2d 439 (S.D.N.Y. 2007) .............................................31, 32

## STATE CASES

*Hearst Communications, Inc., et al. v. Seattle Times Co.*,
  115 P.3d 262 (Wash. 2005) .........................................................*passim*

*Hulbert v. Port of Everett*,
  245 P.3d 779 ..........................................................................................43

## RULES

Fed.R.Civ.P. 30 ..........................................................................................51

Fed.R.Civ.P. 34 ..........................................................................................58

Fed.R.Civ.P. 56 ...................................................................................*passim*

Southern District of New York Local Rule 56.1 .............................*passim*

## STATEMENT OF RELATED CASES

No other appeal involving this civil action was previously before this or any other appellate court. To the best of Defendants-Appellees' knowledge, Plaintiff-Appellant currently is a party to several ongoing lawsuits pending in the United States District Court for the District of Delaware based on the alleged infringement of one or more of the patents asserted in this action.

# INTRODUCTION

To prove their license defense, Defendants were required to establish that, under the terms of the Microsoft Settlement:  (1) they qualify as "Microsoft Third Parties" entitled to the benefits of its releases, licenses and covenants not to sue; and (2) the Accused Products qualify as "Microsoft Products," because each is a "combination, aggregation or hybrid that incorporates or uses" an "Offering" of Microsoft, which includes any "technology, software, product, equipment, method, or service."  Using undisputed evidence, Defendants proved both of those elements in multiple ways.  The district court correctly concluded that no genuine issue of material fact existed warranting trial on this defense.  Accordingly, the district court granted summary judgment because the claims in this action are subject to the releases, licenses and covenants that PDIC agreed to in the Microsoft Settlement.

For several reasons, this Court should affirm the district court's ruling.  First, PDIC's appeal relies primarily on arguments not presented to the district court and thus waived.  Second, PDIC fails (as it did in opposing summary judgment) to identify evidence sufficient to create a genuine issue of fact for trial in response to the undisputed record evidence Defendants offered to the district court.  Third, PDIC has failed to identify any error in the district court's careful analysis of the Microsoft Settlement and application of that Settlement to the undisputed facts.

PDIC's arguments to the contrary are based on conjecture or are otherwise inapposite. Lastly, PDIC fails to show that the district court abused its discretion in denying PDIC the opportunity to take further discovery, particularly considering that PDIC had years to conduct discovery and has not shown any material facts that additional discovery might plausibly reveal to change the outcome on summary judgment.

Accordingly, this Court should reject PDIC's arguments and affirm the district court's grant of summary judgment.

## ISSUES PRESENTED

1.     Whether PDIC may challenge the district court's summary judgment ruling by advancing arguments and asserting factual disputes before this Court that PDIC did not properly present or preserve in the district court?

2.     Whether the district court properly granted summary judgment based on undisputed evidence that the Defendants' Accused Products incorporate and/or use one or more "Microsoft Offerings," and therefore are "Microsoft Products" subject to the licenses, releases and covenants not to sue granted by PDIC in its settlement with Microsoft?

3.     Whether the district court acted within its broad discretion in denying PDIC's Fed. R. Civ. P. 56(d) request to reopen and permit additional discovery before the district court ruled on Defendants' summary judgment motion, where

PDIC (a) already had conducted the discovery necessary to assess whether the

Accused Products are "Microsoft Products" under the Microsoft Settlement, and

(b) failed to identify specific additional discovery needed to oppose the motion?

## STATEMENT OF THE CASE

PDIC appeals the district court's summary judgment in favor of Defendants

HP and FNA, which rests on undisputed evidence that the HP and FNA products

accused of infringing PDIC's patents are "Microsoft Products" within the scope of

the licenses, releases and covenants not to sue in a settlement agreement between

PDIC and Microsoft ("Microsoft Settlement").  The district court's judgment

turned on application of the plain meaning of the Microsoft Settlement to the

undisputed evidence.  The evidence demonstrated that the Accused Products[1]

incorporate and/or use "Microsoft Offerings," as that term is defined in the

Microsoft Settlement, and therefore constitute "Microsoft Products" for purposes

of the Settlement.  In opposing summary judgment, PDIC did not identify any

genuine dispute of material fact for trial or any legitimate grounds for its request

for additional discovery.

---

[1] The "Accused Products" are for HP, digital still camera products, scanning
products (printers and scanners) and the HP Snapfish digital photo service (A523
(¶6); A570-71), and for FNA, digital cameras and scanners (A2).

HP and FNA submit the following statement to correct the inaccuracies and omissions in PDIC's Statement of the Case, which is replete with assertions that are unsupported and/or false based on the undisputed record evidence.[2]

### A.    The Parties And Procedural History Of The Litigation

PDIC is a patent holding company that incorporated in Texas days before filing this action on January 25, 2010 in the United States District Court for the Eastern District of Texas against HP and FNA for alleged infringement of U.S. Patent Nos. 4,813,056 (the "'056 patent") and 4,860,103 (the "'103 patent"). A123-35.  The asserted patents expired in October 2006 and December 2007 respectively, years before PDIC filed suit.

Defendant HP is a global provider of technology solutions and is or was responsible for selling or providing the HP printers, scanners and digital camera products and the Snapfish digital photo service that PDIC accused of infringement. Defendant FNA is responsible for North American marketing, sales, distribution, and servicing of the FUJIFILM digital cameras and scanners that PDIC accused of infringement.

---

[2] Much of PDIC's nearly 20-page "Statement of the Case" constitutes argument. Accordingly, HP and FNA have responded to many points from PDIC's Statement of the Case in the Argument section of this response brief, *infra*.  This section focuses on correcting the factual assertions in PDIC's principal brief.

On February 1, 2012, this case was transferred from the Eastern District of Texas to the United States District Court for the Southern District of New York. A195-215.  Following the close of fact discovery on February 6, 2014, Defendants each filed a pre-motion letter seeking permission to move for summary judgment on a number of grounds, including the Microsoft Settlement defenses.[3]  A326-329; A335-337.  On April, 3, 2014, the district court held a hearing on Defendants' proposed motions.  A341.  The court elected to proceed with summary judgment in stages, allowing Defendants to move first for summary judgment based on the licenses, releases and covenants in the Microsoft Settlement.  A366.  Briefing on Defendants' motion was completed in June 2014.  On March 26, 2015, the district court issued its opinion and order granting Defendant's motion for summary judgment.

### B.    The Microsoft Settlement

In December 2012, PDIC filed suit against Microsoft Corporation ("Microsoft") and other defendants in the United States District Court for the District of Delaware.  On June 28, 2013, after extended negotiations, PDIC and Microsoft entered into the Microsoft Settlement.  PDIC's lead counsel in the

---

[3] A party must submit a letter setting forth the basis of an anticipated motion before it may file any motion, under Rule 2.A of Judge Sullivan's Individual Practices. *See* http://www.nysd.uscourts.gov/cases/show.php?db=judgeinfo&id=1134.

district court case negotiated the Settlement for PDIC, and it was executed by

PDIC's President.  A543; A538.  The Microsoft Settlement was intended to

"completely resolve any PDIC Claim for Relief."  A527.  To that end, in return for

a substantial payment from Microsoft, PDIC granted broad licenses, releases and

covenants both to Microsoft <u>and</u> to all "Microsoft Third Parties," thereby

protecting Microsoft from any further entanglement in PDIC litigation by

extinguishing PDIC's claims against not only Microsoft but also others that use

Microsoft technology.  A526-39 (Sections I, III, IV, V, and VI).

     Several definitions and provisions in the Microsoft Settlement are key to the

issues raised in this appeal.  Section 1.8 of the Microsoft Settlement defines

"Microsoft Products" broadly to include <u>both</u> (1) any Microsoft "technology,

software, product, equipment, method or service" (*i.e.*, "Offering") <u>and</u> (2) any

"combination, hybrid or aggregation that incorporates or uses" such an Offering:

> **1.8    "Microsoft Products"** means <u>(1) any past, present, or</u>
> <u>future technology, software, product, equipment, method, or</u>
> <u>service ("Offering")</u> of Microsoft or any Microsoft Released
> Party, including without limitation any past, present or future
> Offering that is made by or for, designed by or for, provided to,
> provided by or for, obtained from, obtained by or for, purchased
> from, purchased by or for, sold or offered for sale to, sold or
> offered for sale by or for, imported or exported to, imported or
> exported by or for, used by or for, distributed to, distributed by
> or for, leased to, leased by or for, hosted to, hosted by or for,
> licensed from, or licensed by or for Microsoft or any Microsoft
> Released Party and <u>(2) any past, present or future combination,</u>
> <u>hybrid or aggregation that incorporates or uses any Offering</u>
> <u>described in 1.8(1) above</u>, including without limitation any use

> with or combination, hybrid or aggregation with any past,
> present or future third-party Offering.

A528 (emphasis added).

Section 1.10 of the Microsoft Settlement defines "Microsoft Third Parties"

broadly as follows:

> **1.10  "Microsoft Third Parties"** means any Entity other than
> Microsoft, including, for example, Microsoft's customers,
> suppliers, original device manufacturers, original equipment
> manufacturers, licensees, hosters, distributors, independent
> software vendors, and end users.

A528.

The Microsoft Settlement contains a series of licenses, releases and

covenants that apply to Microsoft Products and that benefit both Microsoft and all

Microsoft Third Parties.  Section 3.2 of the Microsoft Settlement, under the

heading "Releases," states that:

> [i]n consideration for the payment described in Section 6,
> PDIC and its Affiliates … voluntarily and irrevocably
> release each of the Microsoft Third Parties of and from
> any and all Claims for Relief, including without
> limitation for any infringement of the Licensed IP, but
> only as to Microsoft Products, that the PDIC Releasing
> Entities have, may have had, might have asserted, may
> now have or assert, or may hereafter have or assert
> against the Microsoft Third Parties, or any of them.

A529.

Section 4.2 of the Microsoft Settlement, under the heading "Licenses," states

that:

> [i]n consideration for the payment described in Section 6, PDIC and its Affiliates … grant to the Microsoft Third Parties a worldwide, irrevocable, nonexclusive, perpetual, fully paid up, retroactive, current, and future license ("License") to and under the Licensed IP, but only as to Microsoft Products… . This Agreement is intended to and does exhaust all rights of the PDIC Releasing Entities in all Claims for Relief associated with any Licensed IP as to Microsoft Third Parties in connection with Microsoft Products, including all such Claims for Relief anywhere in the world.

A530.

Section 4.3 of the Microsoft Settlement confirms that PDIC and Microsoft were considering HP's Accused Products, because the Settlement expressly required PDIC to withdraw its Microsoft-related infringement contentions asserted against HP in the underlying litigation:

> Within ten (10) business days of execution of this Agreement, the PDIC Releasing Entities will withdraw any and all infringement contentions related to the Licensed IP that relate in whole or in part to a Microsoft Product, including without limitation any Microsoft Product-related infringement contentions asserted against Hewlett-Packard ("HP") in *Princeton Digital Image Corp. v. Hewlett-Packard, et al.*, which is currently pending in in [sic] the U.S. District Court for the Southern District of New York and designated 1:12-cv-779-RJS ("the HP Action").

A531.

Section 5.2 of the Microsoft Settlement, under the heading "Covenants Not to Sue," states that:

> PDIC and its Affiliates … irrevocably covenant not to sue (or otherwise act in any way to seek to enforce or assist or encourage anyone else to enforce any Claims for Relief against) any Microsoft Third Party in connection with any of the Licensed IP, but only as to Microsoft Products.

A531.

Section 5.3 of the Microsoft Settlement provides that "[a]ny Entity that is within the scope of the Licenses, releases, or covenants not to sue in this Agreement is intended to be, and is, a third-party beneficiary and is entitled to enforce the Licenses, releases, or covenants without joinder of Microsoft."  A531.

Finally, Section 9.11 of the Microsoft Settlement provides that any ambiguities in the scope of the agreement "should be resolved in favor of finding no liability as to Microsoft or a Microsoft Third Party in connection with the Licensed IP."  A536.

### C.    The District Court's Opinion And Order Granting Defendants' Motion For Summary Judgment

In its March 26, 2015 Opinion and Order, the district court carefully analyzed the Microsoft Settlement to determine which patents, products, and entities are covered by the releases, licenses and covenants not to sue in that agreement.  With respect to patents, the district court found that "[t]he parties do not, and cannot, dispute that the [patents asserted by PDIC] are part of the 'Licensed IP' that is the basis of the Microsoft Settlement… ."  A7.  The district

court also found it undisputed that HP and FNA are "Microsoft Third Parties" as that term is defined in Section 1.10 of the Microsoft Settlement.  *Id.*  Both HP and FNA presented undisputed evidence that they are customers of Microsoft, *see, e.g.,* A495-97 (¶¶4, 9), A503 (¶¶4-5), A508 (¶¶4-5), A514 (¶¶4-5), and the Settlement's definition of "Microsoft Third Parties" is so broad that it literally includes "any Entity other than Microsoft."  A528 (Section 1.10).

Having determined that the asserted patents are "Licensed IP" and that HP and FNA are "Microsoft Third Parties," the district court analyzed the scope of "Microsoft Products" entitled to the releases, licenses and covenants not to sue in the Microsoft Settlement.  The district court noted that "the definition of Microsoft Product includes 'any past, present or future third-party Offering' that is a 'combination, hybrid or aggregation that incorporates or uses any [Microsoft Offering].'"  A8.  Because the Microsoft Settlement does not define the terms "combination," "hybrid," "aggregation," "incorporates," or "uses," the district court interpreted those terms according to their "ordinary, usual, and popular meaning," as required by Washington law.  *Id.*

Next, the district court analyzed whether the Accused Products qualify as "Microsoft Products."  The district court answered that question in the affirmative, ruling that each Accused Product is a Microsoft Product because it is a combination or aggregation that incorporates or uses a Microsoft Offering.  A13-

14, A15.  Specifically, the district court concluded that Microsoft Catalog (".cat")

files, the Microsoft FAT32 File System, and Microsoft ActiveX technology are

"Offerings of Microsoft," and that all of the Accused Products are "Microsoft

Products" because they incorporate or use one or more Microsoft "Offering."  A2,

A7.  In so ruling, the court rejected PDIC's principal arguments that the Microsoft

Offerings used by the Accused Products must relate to the Licensed IP, or that the

Microsoft Offerings must be necessary to the functioning of the Accused Products.

A14-15.

Finally, the district court ruled that because the Accused Products are

"Microsoft Products," they are covered by the releases, licenses and covenants not

to sue set forth in Sections 3.2, 4.2 and 5.2 in the Microsoft Settlement, and thus

granted summary judgment in favor of Defendants.  A15.

## SUMMARY OF ARGUMENT

This appeal boils down to PDIC's attempt to rewrite the Microsoft

Settlement—an agreement that PDIC itself negotiated—and/or to reopen discovery

in the hope of finding some way to avoid the clear effect of that agreement, even

though PDIC already had a full and fair opportunity to conduct discovery on the

Accused Products.  The district court correctly applied the law to the undisputed

facts to conclude that the Accused Products fall within the scope of licenses,

releases and covenants in the Microsoft Settlement.  And it also acted well within

its discretion in refusing to reopen discovery in the absence of any showing by PDIC that further discovery was essential to support its opposition to Defendants' summary judgment motion.

PDIC's arguments to this Court are without merit.  As an initial matter, PDIC has discarded several arguments it relied on in opposing summary judgment below in favor of new arguments that were not presented to the district court.  But PDIC has waived those arguments and should not be permitted to shift positions on appeal to raise arguments that the district court did not have an opportunity to consider.  PDIC also waived the right to challenge the undisputed material facts submitted by Defendants; namely, that the functionalities identified by Defendants are Microsoft "Offerings" and that the Accused Products "incorporate or use" those Microsoft Offerings.  Rather than complying with Southern District of New York Local Rules by identifying any record evidence that might contradict the material facts proffered by Defendants, PDIC asserted baseless, boilerplate objections in response to Defendants' Rule 56.1 Statements.  Moreover, PDIC presented the district court with only conclusory expert testimony that did not directly address or rebut Defendants' documentary evidence and factual testimony and did not otherwise create a genuine issue of material fact for trial.

The district court correctly applied the terms of the Microsoft Settlement to the undisputed record facts and concluded that the Accused Products "incorporate

or use" Microsoft .cat files and the Microsoft FAT32 File System, each of which is a Microsoft "Offering." PDIC's arguments are unsupported by the evidence and contrary to the terms of the Microsoft Settlement. Further, PDIC fails to show that the district court improperly overlooked or relied on extrinsic evidence to understand the unambiguous language of the Microsoft Settlement. While PDIC may now regret the scope of the Microsoft Settlement, and while it might wish that it had not agreed to a settlement that encompasses Defendants and their Accused Products, PDIC cannot rewrite the Microsoft Settlement after the fact with its self-serving portrayal of the alleged intent behind the agreement.

Lastly, PDIC fails to show that the district court abused its discretion by not allowing PDIC the opportunity to reopen and conduct further discovery. PDIC had multiple years to conduct discovery and should not benefit from its lack of diligence. Moreover, PDIC did not identify to the district court—and still has not identified on appeal—any evidence that could have resulted in a genuine issue of fact for trial. Instead, all necessary, undisputed facts were available to the district court when it ruled on Defendants' summary judgment motion.

## STANDARD OF REVIEW

The standard of review for PDIC's challenge to the district court's grant of summary judgment is set forth in PDIC's Opening Brief ("PDIC Br."). PDIC Br. 26-27. The district court's refusal to reopen discovery before ruling on the

Defendants' summary judgment motion is reviewed for an abuse of discretion.

*See, e.g., Am. Express Co. v. Goetz*, 515 F.3d 156, 159 (2d Cir. 2008); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 102 (2d Cir. 2008).

## ARGUMENT

## I.     PDIC WAIVED ITS PRINCIPAL ARGUMENTS ON APPEAL BY FAILING TO PRESENT THEM TO THE DISTRICT COURT

### A.     A Party Cannot Raise On Appeal Arguments That Were Not Fairly Presented To The District Court

This Court does not consider arguments that were not presented to the district court. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-23 (Fed. Cir. 2008) ("[t]his is an appellate court and as such we abide by the general rule that new arguments will not be decided in the first instance on appeal.") Instead, "if a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court." *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) (declining to consider "novel infringement arguments" raised for the first time on appeal, and affirming summary judgment of noninfringement).

### B.     PDIC's Opposition To Defendants' Motion For Summary Judgment Rested On Arguments That PDIC Has Abandoned On Appeal

In opposing summary judgment before the district court, PDIC focused primarily on two arguments it has now abandoned.  First, PDIC claimed there must be a nexus between the Microsoft "Offerings" incorporated or used in the Accused

Products and the functionalities or components accused of infringement. *See, e.g.,* A728 ("[e]ven if it were true that some of Defendants' functionalities or digital components were 'combination, hybrid or aggregation' [sic] that incorporated or used Microsoft Offerings, the fact is irrelevant here unless the specific 'combination, hybrid or aggregation' that is accused of infringement here incorporated or used Microsoft Offerings"); *see also* A729 ("Defendants have not shown, and indeed have not attempted to show, that any of the accused systems and functionalities are 'combinations, hybrids or aggregations' of Microsoft Offerings"); A741.

Second, PDIC disputed the scope of products covered by the Microsoft Settlement, arguing that Defendants attempted to "improperly read out" the phrase "combination, hybrid or aggregation" and replace it with the word "product," thereby extending the definition to "any HP or FNA 'product' that incorporates or uses a Microsoft Offering." A727-8, A729, A740. PDIC further contended that the definition of a Microsoft "Offering" does not include third party "products." *Id.*

PDIC's opening appeal brief does not advance either of the principal arguments PDIC relied upon in briefing to the district court: (1) that there must be a nexus between the Microsoft Offerings and the accused functionalities of the Accused Products, and (2) that Defendants were reading "combination, hybrid or

aggregation" under the Microsoft Settlement to mean any "product" that incorporates or uses a Microsoft "Offering."  As a result, PDIC has waived those arguments and is precluded from resurrecting them in its reply brief.  *See SmithKline Beecham Corp. v. Apotex Corp.* 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("our law is well established that arguments not raised in the opening brief are waived"); *Golden Bridge Tech., Inc.*, 527 F.3d  at 1324 FN3 ("we do note that [plaintiff-appellant] has completely abandoned the [arguments made below] on appeal and has therefore waived any appeal of that determination").

## C.    PDIC Cannot Raise New Arguments For The First Time On Appeal

Having discarded the main arguments it asserted in attempting to avoid summary judgment, PDIC now seeks to advance arguments that were not fairly presented to the district court.  Specifically, PDIC now asserts that the functionalities and components identified by Defendants—for example the Microsoft .cat files and Microsoft FAT32 File System—are not Microsoft "Offerings."  PDIC Br. 36-38.  In its summary judgment briefing, PDIC accepted that those functionalities may qualify as Microsoft Offerings (A741-42), but argued that those functionalities had no nexus to the asserted patents and that Defendants sought to impermissibly broaden the definition of Microsoft Products to "extend to any 'product' that incorporates or uses an 'Offering' of Microsoft," such as the functionalities identified by Defendants.  A727-9, A740-41.

Likewise, PDIC's summary judgment opposition did not dispute the meaning of the term "aggregation" or offer any evidence relevant to the meaning of that term. A739-40. PDIC only took issue with whether the complete phrase "combination, hybrid or aggregation" encompassed the Accused Products. *See* A7 ("PDIC … asserts that the Accused Products are not covered by the Microsoft Settlement because they are not 'combination[s], hybrid[s] or aggregation[s]' with the Microsoft 'Offerings.'"). The only consistencies between PDIC's positions on summary judgment and in this appeal are: (a) PDIC's assertion that extrinsic evidence regarding PDIC's intent in entering the Microsoft Settlement should have been considered and credited by the district court; and (b) PDIC's contention that it is entitled to discovery, even though the discovery it claims to have needed could not have led to the identification of genuine issues of material fact for trial.[4]

Because PDIC failed to present to the district court the substantive arguments it now raises on appeal—namely, (1) that the functionalities and components identified as "Offerings" by Defendants are not in fact "Offerings," and (2) the meaning of the term "aggregation"—those arguments are waived on appeal. *See Sage Products, Inc*., 126 F.3d at 1426; *Golden Bridge Tech., Inc*., 527 F.3d at 1322.

---

[4] Each of these arguments is addressed elsewhere in this brief. *See* Argument, Sections III and V, *infra*.

**D.     Having Failed To Comply With Local Rule 56.1 Or To Cite Record Materials As Required by FRCP 56(c), PDIC Cannot Now Dispute Facts Established by Defendants' Moving Papers**

PDIC has also waived the arguments it now advances on appeal by failing to comply with Local Rule 56.1 in the district court.  Specifically, in opposing summary judgment, PDIC filed Responses to Defendants' Local Rule 56.1 Statements that did not identify genuine issues of material fact for trial or include "citation[s] to evidence which would be admissible," as required by Local Rule 56.1 and Southern District of New York precedent.  *See, e.g., Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (party opposing summary judgment must "cite to evidence that would be admissible at trial to show that the controverted statement is, in fact, in dispute").  Instead, PDIC asserted baseless objections that Defendants' statements of fact consisted of "improper legal conclusions" and that Defendants purportedly failed to disclose certain fact witnesses during discovery.  A713-718; A753-762.

Indeed, PDIC asserted only objections and did not identify any material facts in dispute with respect to such critical issues as whether the Accused Products qualify as Microsoft "Offerings" under the terms of the Microsoft Settlement:

> **STATEMENT NO. 11:**  *The accused FNA products incorporate or use one or more "Offerings" of Microsoft, as that term is described in Section 1.8(1) of the Microsoft Agreement.  Declaration of Masanori Yoshida; Paragraphs 3-11 above.*

**RESPONSE:**  Subject to the above General Objections, this statement is disputed.  This statement consists of an improper legal conclusion, which the Court should strike or disregard.  *See, e.g., Antunes*, 2011 WL 1990872 at *2 n.9.  This statement is disputed because Masanori Yoshida was not disclosed to PDIC under Fed.R.Civ.P. Rule 26(a)(1).  *See* Pazuniak Declaration, ¶7.

A718.

18:  Each accused HP product qualifies as a "Microsoft Product" under Section 1.8, because each is a combination, hybrid, or aggregation that "incorporates or uses" a Microsoft "Offering."  HP Exhibit 1, p. 2; Fontani Decl. ¶¶ 4-10; Larson Decl. ¶¶ 4-11; Behrend Decl. ¶¶ 4-10; HP Declaration of Jimmie Sato ("Sato Decl.") ¶¶ 3-7; HP Exhibits 6, 12.

A618.

**RESPONSE TO STATEMENT NO. 18:**  Subject to the above General Objections, this statement is disputed.  This statement consists of an improper legal conclusion, which the Court should strike or disregard.  *See, e.g., Antunes*, 2011 WL 1990872 at *2 n.9.  This statement is disputed because Paolo Fonatani, Bradley Larson, and Jimmie Sato were not disclosed to PDIC under Fed.R.Civ.P. Rule 26(a)(1).  *See* Pazuniak Declaration, ¶7.

A759.

With respect to other issues, PDIC's Rule 56.1 Responses stated nothing more than that the particular fact proffered by Defendants was "disputed" without providing any evidence to create a genuine issue of material fact for trial:

**STATEMENT NO. 4:**  *The accused FNA digital camera products display the "Designed For Microsoft Windows XP" logo.  See, e.g., FUJIFILM-PDIC-0001229-1507;*

*36631-37318; 94248- 97054; 250744-250847; 277017-277126; 554340-554519; 2046461-2046624; 2051567-2051697; 2051698-2051829; 2114402-2114469.*

**RESPONSE:**  Subject to the above General Objections, this statement is disputed.

A715.

**STATEMENT NO. 5:**  *The accused FNA digital camera products were certified through Microsoft Windows Hardware Quality Lab ("WHQL") testing.  Declaration of Masanori Yoshida, ¶ 8, citing FUJIFILM-PDIC-2273353; 0063771; 0063803; 0063808; 0063809; 0464889; 1377079; 1377089; 1377091; 1377092; 2183195; 2183203.*

**RESPONSE:**  Subject to the above General Objections, this statement is disputed.

A715-16.  By filing meritless, boilerplate objections to Defendants' Local Rule 56.1 Statements, PDIC failed to identify genuine issues of material fact for trial under the applicable Southern District of New York rules.  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 458 n.1 (S.D.N.Y.2011) (Rule 56.1 responses that "do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact"); *Risco v. McHugh*, 868 F. Supp. 2d 75, 88 n.2 (S.D.N.Y. 2012) (same).  PDIC also failed to meet the requirements established in Fed. R. Civ. P. 56(c) for supporting an opposition to a motion for summary judgment.  Thus, the district court recognized in its summary judgment order that

"unless otherwise noted, where only one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refuse [sic] that fact, or merely objects to inferences drawn from that fact."  A1, FN1.  Accordingly, PDIC cannot now deny that the functionalities identified by Defendants are Microsoft "Offerings" or that the Accused Products "incorporate or use" those Microsoft Offerings.

## II. THE DISTRICT COURT CORRECTLY RULED THAT THE ACCUSED PRODUCTS ARE A "COMBINATION, HYBRID OR AGGREGATION" THAT "INCORPORATE OR USE" A MICROSOFT OFFERING

Even had PDIC properly preserved the arguments it now raises on appeal (which it did not) and even if it had complied with the district court's Local Rules in opposing summary judgment (which it did not), PDIC still failed to identify any genuine issues of material fact as to whether each of the Accused Products is a "combination, hybrid or aggregation" that "incorporates or uses" a Microsoft Offering.  Further, PDIC cannot support its contention that the district court ignored the declarations of Messrs. Mancoridis and Kia.  PDIC Br. 17-22.  To the contrary, the district court expressly noted in its summary judgment order that in deciding the motion, the Court considered the parties' memoranda of law "along with the affidavits and exhibits attached thereto."  A1, FN1.

Those declarations addressed a number of legally irrelevant issues and did not contradict the key facts the district court relied upon in granting Defendants'

motion with any substantiated evidence.  A662-75; A694-712; *compare* A1-16.

For example, PDIC's experts both offered testimony on the issue of whether the

"Offering" of Microsoft incorporated in or used by the Accused Products has a role

in implementing the inventions claimed in the '056 or '103 patents.  A667 (¶22);

A697-701 (¶¶4-16, 23-25, 27).  As explained in Section I.B, PDIC is not advancing

its "nexus" argument on appeal and that argument was properly rejected by the

district court in any event.  PDIC's experts also offered extensive testimony on the

issue of whether the "Offering" of Microsoft is executed within the Accused

Products or instead on a separate PC or flash memory card.  A663-666 (¶¶ 4-9, 14,

17); A699-702 (¶¶ 22, 29).  For the reasons set forth in Section II.A through C, that

testimony is irrelevant because it is based on an unduly narrow interpretation of the

Accused Products and ignores that a "combination, hybrid or aggregation"

qualifies as a "Microsoft Product" as long as it incorporates <u>or</u> uses an "Offering"

of Microsoft.

> **A.    The Accused Products Incorporate Or Use Microsoft ".cat" Files**

The district court correctly concluded that no genuine issues of fact for trial

exist as to whether the Accused Products incorporate or use Microsoft .cat files.

A2-3, A13.  Defendants offered sworn testimony from knowledgeable witnesses

that the Microsoft .cat files were provided to Defendants by Microsoft and permit

the Accused Products to connect to a computer using a Microsoft Windows

operating system to view and download captured photographs. *See, e.g.,* A497-98 (¶¶9-12); A466-79; A505-06 (¶¶ 8-10); A509-11 (¶¶ 6-10); A515-17 (¶¶ 7-11). Defendants also proved that these .cat files are created by and digitally signed by Microsoft. *Id.* Even PDIC acknowledges in its appeal brief that the Accused Products use Microsoft .cat files when operating with a Windows PC. PDIC Br. 17 ("the .cat files on the CD are used only to authenticate files for purposes of installing the CD on a PC running the Microsoft Windows operating system…"). Nevertheless, PDIC argues that (1) Defendants put forth no "documented evidence" to support their position, (2) the .cat files are not "Offerings" of Microsoft, and (3) the .cat files are not installed on the hardware of the Accused Products. PDIC Br. 18, 38-39. For the reasons discussed below, the district court properly rejected the first and third arguments. The second argument was not presented to the district court and is therefore waived, but even if it were not, it is contrary to the language of the Microsoft Settlement.

> ### 1.     Defendants offered uncontested testimony and documentary evidence that Microsoft provides the .cat files to Defendants

PDIC contends that the district court's ruling should be reversed because there is no "documented evidence" to show that Defendants in fact received the pertinent .cat files from Microsoft. PDIC Br. 18, 38. This argument is wrong in several respects.

First, the definition of Microsoft "Offering" is broad and is in no way limited to technology provided directly by Microsoft to a third party. For example, an "Offering" of Microsoft includes any technology that is "licensed from" or "designed by or for" Microsoft. A528 (Section 1.8).

Second, even if the definition of "Offering" were so limited, the district court properly acknowledged the undisputed testimony from Defendants' witnesses that the Microsoft .cat files are software files <u>provided by Microsoft</u> for inclusion in the Accused Products after those products passed Microsoft WHQL (Windows Hardware Quality Lab) testing. A2 ("There is no dispute that each HP and FNA camera, scanner, and printer utilizes Microsoft Catalog (".cat") files, which are software files that Microsoft provides to HP and FNA to allow HP and FNA products to seamlessly operate with a Microsoft operating system.") (citing A619 (¶ 21); A505-06 (¶¶ 8-10); A509-11 (¶¶ 6-10); A515-17 (¶¶ 7-11); A397 (¶ 6); A498 (¶12, 13)). Defendants' declarations complied with the requirements of Fed. R. Civ. P. 56(c)(4), and PDIC has not identified any authority to support its apparent contention that Defendants were required to provide further documentary evidence to reinforce the testimony of their declarants. *See, e.g., Union Carbide Corp. v. Exxon Corp.*, 77 F.3d 677, 681-82 (2d Cir. 1996). And in any event, documentary evidence of Microsoft's digital signature on the .cat files was provided to PDIC and the district court (in the form of screenshots of the

signatures themselves), thus proving that the .cat files are created by and provided by Microsoft. The digital signatures show that the .cat files were issued by "Microsoft Windows Hardware Compatibility" publisher. A639; A497-98 (¶¶9-12).

Third, to create a genuine issue of fact for trial, PDIC was required to come forward with evidence contradicting the facts relied upon by Defendants. *See, e.g., Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 670 (S.D.N.Y. 2011) ("non-moving party must do more than show that there is 'some metaphysical doubt as to the material facts'"). PDIC did not come forward with any evidence to support a finding that .cat files are not provided to Defendants by Microsoft and thus are not a "Microsoft Offering."

> **2.    PDIC's new argument that the .cat files are not "Offerings" of Microsoft was waived and is contrary to the terms of the Microsoft Settlement**

PDIC also makes the superficial argument that the Microsoft .cat files are "merely digital seals" and that "these cryptographic hashes" are not "Offerings" because they purportedly are not a "technology, software, product, equipment, method, or service." PDIC Br. 39. While PDIC's attorney stated before the district court that a .cat file is a digital "thumbprint" (A685 (¶17)), PDIC did not argue that the .cat files consequently are not a Microsoft "Offering." Similarly, although one of the expert declarations submitted by PDIC included two

paragraphs purporting to describe what a .cat file is, A665-6 (¶¶13-14), PDIC never argued that a .cat file is not a "technology, software, product, equipment, method, or service." Accordingly, PDIC has waived these arguments. *See Sage Products, Inc.*, 126 F.3d at 1426; *Golden Bridge Tech., Inc.*, 527 F.3d at 1322.

Even if PDIC had properly preserved the argument, it lacks merit. PDIC's new argument is based on the assumption that .cat files cannot be considered an "Offering" of Microsoft because they are not significant to the operation of the products; that is, they are "merely digital seals." PDIC Br. 39. There is no support for such a narrow reading of the Microsoft Settlement. Despite PDIC's efforts to change the terms of the Microsoft Settlement after the fact, in actuality the Settlement does not assign any significance to the level of innovation or importance of a given Microsoft "Offering." Rather, the Settlement covers all "technology, software, product, equipment, method or service" of Microsoft. A528. PDIC cannot credibly deny that Microsoft .cat files qualify as, at a minimum, "technology" and "software."

> **3.    The district court properly rejected PDIC's argument that a certain portion of the Accused Products must include the Microsoft .cat files**

PDIC also incorrectly asserts that the Accused Products do not "incorporate or use" .cat files because those files purportedly "are never installed" on any Accused Product. PDIC Br. 17-18. But PDIC's argument, once again, bears no

relation to the language of the Microsoft Settlement.  PDIC's only argument is that the .cat files are included with the viewing software on CDs provided by Defendants with the Accused Products, rather than installed on some portion of those products themselves.  PDIC Br. 17, 18.  PDIC's argument is wrong on several levels.

First, PDIC relies on an unduly narrow interpretation of the "Accused Products" in this case.  The accused digital camera, printer, and scanner products were sold by Defendants to customers with the CDs that include .cat files.  A13 (concluding that "[t]he Microsoft .cat files are digitally signed certification files from Microsoft that are shipped with HP and FNA cameras, scanners, and printers…").  Accordingly, the Accused Products as sold to customers do in fact incorporate viewing software containing the Microsoft .cat files.  PDIC cannot circumvent the releases, licenses and covenants not to sue granted in the Microsoft Settlement by selectively defining which parts of the products at issue in this case it considers to be the "Accused Products."

Second, the district court acknowledged the distinction relied upon by PDIC, but nonetheless correctly concluded that the Accused Products are a "combination" that use the Microsoft .cat files or at a minimum an "aggregation."  A13, A15.  That conclusion is supported by Defendants' evidence that the Microsoft .cat files allow the Accused Products to be seamlessly plugged into and operated with a PC

running a Microsoft operating system and that, without the .cat files, an error message would appear on the PC warning the user that the product may not be Microsoft compatible.  *See, e.g.,* A466-79; A497-98 (¶¶9-12); A506 (¶9); A510-11 (¶8); A516-17 (¶9).  Thus, even if the Court were to accept PDIC's unduly narrow definition of the Accused Products and find that those products do not "incorporate" .cat files, PDIC's argument would not carry the day because a Microsoft Product must only incorporate <u>or</u> use any Microsoft Offering.  A528. PDIC cannot credibly dispute that the Accused Products <u>use</u> the .cat files to communicate with a PC.  *See* A13 ("when a user plugs in one of the cameras, scanners, and printers to a Windows PC," the .cat files allow those products to "operate[ ] seamlessly with the Microsoft operating system").  In that regard, it is irrelevant that the .cat files are not loaded or executed on Defendants' cameras, printers, or scanners because those files are "used" by the Accused Products to facilitate proper communications with a PC.

Third, PDIC notes that the district court did not separately identify Apple or Linux products with the .cat files.  PDIC Br. 19, 45.  That argument is a red herring.  Each of the Accused Products is sold and shipped with software on a CD that contains Microsoft .cat files—Microsoft-provided technology and software. Whether those Accused Products are ultimately connected to a computer (be it a Windows PC, an Apple computer, or a Linux-based computer) does not change the

undisputed fact that each Accused Product "incorporates or uses any Offering" of Microsoft because they contain Microsoft .cat files within the software that ships with the products. Indeed, PDIC's argument is also contrary to the broad and plain language of the Microsoft Settlement, which covers any "combination, hybrid or aggregation" that "uses" any Offering of Microsoft, without requiring the "combination, hybrid or aggregation" to "use" the Offering of Microsoft at all times or in every conceivable configuration. While the question whether a customer actually uses an Accused Product in a certain way might be relevant to infringement issues in some cases, that question is not relevant to Defendants' license defense here, particularly because the Microsoft Settlement does not contain any field-of-use restrictions.

Accordingly, the district court properly rejected PDIC's belated attempts to circumscribe the scope of the Microsoft Settlement, and correctly concluded that the Accused Products incorporate or use Microsoft .cat files and are therefore "Microsoft Products" entitled to the releases, licenses and covenants not to sue in the Microsoft Settlement. A13.

**B.    The Accused Products Incorporate Or Use The Microsoft FAT32 File System**

There is also no legitimate dispute that the Accused Products incorporate and use the Microsoft FAT32 file format, which is another independent basis to affirm the district court's grant of summary judgment. In fact, PDIC itself

acknowledges that the Accused Products "implement" FAT32 formatting. PDIC Br. 20, 37-38. And the undisputed evidence establishes that the software code that implements FAT32 is stored inside the Accused Products and executes on the Accused Products. A14; A428-34; A496 (¶¶5-7); A506 (¶11); A511 (¶11); A517 (¶12); A612, 614 ("The camera shall support the FAT file system."). For that reason, the district court correctly recognized that "the Microsoft FAT32 File System is part of the firmware – which is a combination of software and hardware – that runs on the [Accused Products], in addition to on a Microsoft Windows PC." A14.

Because the Accused Products indisputably implement FAT32 formatting, PDIC attempts to manufacture an issue of fact by citing to expert testimony that FAT32 is a "file system architecture." PDIC Br. 20. But neither PDIC nor its expert provides any explanation for why the FAT32 architecture is not a Microsoft "Offering." PDIC Br. 20. At a minimum, this file system qualifies as "technology" or a "method" of Microsoft. A528.

PDIC also relies on its expert's unsupported assertion that there is no evidence in the record that "ties the FAT32 implementations" to "Microsoft technology, software, product, equipment, method or service." PDIC Br. 37-38. This argument is directly contradicted by the record. PDIC simply ignores the FAT32 license agreement, misleadingly characterizing it as solely a "white paper."

PDIC Br. 37-38.  The document cited by PDIC includes a license agreement

entitled "Microsoft Extensible Firmware Initiative FAT32 File System

Specification."  A421-27; A496 (¶9).  Among other things, the license states the

FAT32 File System Specification is a "Microsoft specification" that is "owned by

Microsoft," and provides that anyone who downloads or uses the specification

must comply with the terms of the agreement.  A423.  This evidence confirms

Defendants' position that Microsoft does in fact have an ownership interest in the

FAT32 File System Specification and provides a license and covenant not to sue to

third parties who wish to download and use that Specification.  The conclusory and

unsupported testimony from PDIC's expert to the contrary cannot create an issue

of fact for trial.  *Costello*, 783 F. Supp. 2d at 670 ("non-moving party … may not

rely on conclusory allegations or unsubstantiated speculation'"); *Vargas v.

Transeau*, 514 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2007) (summary judgment may

not be avoided by producing conclusory expert testimony that the non-moving

party's position is correct).

    In addition to the documentary evidence, Defendants' declarants testified

that the Accused Products use the Microsoft FAT32 format and that they were

required to obtain a license from Microsoft in order to use that format.  A496 (¶¶5-

6); A506 (¶11); A511 (¶11); A517 (¶12).  Only after obtaining a license could

Defendants then incorporate the Microsoft FAT32 File System into the source code

files for the Accused Products.  *Id.*  Defendants' evidence directly "ties" the

FAT32 File System in the Accused Products to Microsoft, and PDIC's

unsupported and conclusory expert assertions to the contrary cannot create an issue

of fact for trial.  *Costello,* 783 F. Supp. 2d at 670; *Vargas*, 514 F. Supp. 2d at 445-

46.

PDIC and its expert also focus on the fact that the FAT32 File System and

pertinent code allegedly were implemented in the Accused Products by

Defendants.  PDIC Br. 38.  But the fact that Defendants may have written the

software code that embodies the Microsoft FAT32 File System incorporated in the

Accused Products is irrelevant, because nothing in the Microsoft Settlement

requires that Microsoft be the author of the software code for the FAT32 File

System licensed from Microsoft to be deemed a Microsoft "Offering."  Nor does

the Microsoft Settlement limit a Microsoft "Offering" to only those Microsoft

technologies directly practiced by Microsoft.  Rather, an "Offering" of Microsoft

includes any technology that is "licensed from" or "designed by or for" Microsoft.

A528 (Section 1.8).

Accordingly, the district court correctly ruled that the Accused Products are

"Microsoft Products because of their use of Microsoft's FAT32 File System."

A14.  The district court's conclusion in this regard provides an independent ground

for summary judgment, in addition to the Accused Products' use of Microsoft .cat files.

### C.   The District Court Properly Concluded That Each Of The Accused Products Is A "Combination, Hybrid Or Aggregation" That Incorporates Or Uses A Microsoft Offering

In Section III.C of its brief, PDIC contends that the district court improperly construed the term "combination, hybrid or aggregation." PDIC then focuses its argument solely on the term "aggregation," ignoring that the district court ruled that the Accused Products are a "combination" that "incorporate and use" Microsoft .cat files and the Microsoft FAT32 File System. A13, 14. None of PDIC's arguments has any merit.

First, PDIC argues at length that the district court's definition of "aggregation" does not comport with the concept of "aggregation" used in determining patentability. PDIC Br. 41-42. However, PDIC's argument is immaterial because PDIC admits that the definition of aggregation it advocates on appeal "remains consistent with the district court's interpretation." PDIC Br. 42.

Second, PDIC incorrectly contends that the district court never identified the combinations or aggregations it relied upon in granting Defendants' motion. In fact, the district court expressly observed that the Accused Products are "combinations" with the Microsoft .cat files and Microsoft FAT32 File System. A13. The Accused Products are combinations in the sense that they include

various components that make up the product as a whole.  Stated another way, the

Accused Products represent a "union of elements in an invention that work

together cooperatively to perform a useful function."  *Id*.  For example, a digital

camera includes a lens, a CCD, an analog to digital converter, and other

components.  PDIC itself acknowledged in its summary judgment opposition brief

that "[a] camera, printer or any similar instrumentality is a combination of multiple

components and functionalities."  A728.

Likewise, the district court correctly deemed it irrelevant that the .cat files

and the FAT32 File System allegedly do not function unless the Accused Products

are plugged into a Windows PC because, at a minimum, those files together with

an Accused Product are an "aggregation" within the meaning of the Microsoft

Settlement; that is, "a 'set of parts that do not cooperate in structure or function.'"

A15.  As the district court correctly concluded, the Microsoft .cat files and/or

Microsoft FAT32 File System together with the other components of the Accused

Products comprise an "aggregation" under the Microsoft Settlement, irrespective

of whether the Accused Products together with a Windows PC is a "Microsoft

Product."  A15.

Moreover, PDIC's entire argument is premised on the assumption that the

"combination" or "aggregation" must incorporate or include the Microsoft

Offering (*i.e.*, the .cat file or the FAT32 File System).  That assumption is wrong.

The Microsoft Settlement expressly covers "combinations" or "aggregations" that <u>use</u> a Microsoft Offering. Accordingly, it is irrelevant that the .cat files or FAT32 architecture may be implemented on a separate device (a Windows computer) because the Accused Products still <u>use</u> the .cat files and the FAT32 File System.

Third, PDIC reasserts its erroneous argument that the phrase "incorporates or uses" restricts the scope of "Microsoft Products" as defined in Section 1.8 of the Microsoft Settlement. PDIC Br. 44. The district court specifically considered the definitions of "incorporate" and "use" and concluded that these terms "do nothing to circumscribe Section 1.8; rather, they reemphasize the breadth of the Microsoft Products definition." A10. The district court also considered but correctly rejected PDIC's assertion that the words "combination, hybrid or aggregation" limit the breadth of the "Microsoft Products" definition, because PDIC offered no authority or argument to "undermine the plain and ordinary meanings of those words, which demonstrate that they serve to expand – not limit – the Microsoft Product definition." A10.

Fourth, PDIC is wrong in asserting that the district court did not articulate how the Accused Products incorporate or use Microsoft Offerings. Defendants produced a wealth of evidence on that issue (*e.g.* A418-494; A495-99; A502-521; A575-582; A609; A611-614), and the district court devoted three pages of its opinion to explaining how the Accused Products incorporate and/or use Microsoft

.cat files, Microsoft Fat32 File Systems, and Microsoft Active X technology.  A13-15.

Finally, PDIC's suggestion that the Accused Products are not "combinations, hybrids or aggregations" is inconsistent with its own conduct in the litigation. After the Microsoft Settlement was entered, PDIC amended its infringement contentions to remove claims against HP computers pursuant to Section 4.3 of the Settlement, which required PDIC to "withdraw any and all infringement contentions related to the Licensed IP that relate in whole or in part to a Microsoft product, including without limitation any Microsoft product-related infringement contentions asserted against Hewlett-Packard… ."  A775; A531.  In so doing, PDIC necessarily acknowledged that HP's PCs qualify as a "combination, hybrid or aggregation," and there is no reason why HP's computers would qualify, but the accused printers, cameras and scanners would not.

Accordingly, PDIC has shown no error in the district court's interpretation of the phrase "combination, hybrid or aggregation" in the Microsoft Settlement or its conclusion that the Accused Products are Microsoft Products.

### D.   There Is No Basis For PDIC's Argument That A Microsoft Offering Requires A Microsoft Proprietary Or Ownership Interest

In contending that the district court misconstrued the term "Microsoft Offering," PDIC advances an entirely new argument on appeal that the words "of

Microsoft" in the definition of "Microsoft Products" in Section 1.8 indicate that

Microsoft must have an ownership right in the Microsoft "technology, software,

product, equipment, method, or service." PDIC Br. 39-41. PDIC never asserted

this argument in opposing Defendants' motion for summary judgment.

Accordingly, it is waived on appeal. *See Sage Products, Inc.*, 126 F.3d at 1426;

*Golden Bridge Tech., Inc.*, 527 F.3d at 1323.

In addition to being waived, PDIC's new argument has no basis in the

Microsoft Settlement. Indeed, the definition of "Offering" of Microsoft expressly

includes examples where the "Offering" would not be owned by Microsoft, such as

a technology, product, equipment, method, or service that is "leased to" Microsoft.

A528 (Section 1.8). If PDIC intended to limit the meaning of "Offerings" to only

those offerings in which Microsoft has an explicit ownership or proprietary

interest, then PDIC should have bargained for such a limitation. *See, e.g.,* A11

(noting that PDIC could have bargained to have the Microsoft Settlement cover

only third-party Offerings that utilized the asserted patents, but that PDIC did not

negotiate for such a restriction).

Other than its unsupported assertion that Microsoft must have a

"proprietary" interest, PDIC has not presented anything showing how the .cat files

and FAT32 File System are not "of Microsoft." Moreover, even if the Settlement

could be read to require a Microsoft proprietary interest, PDIC completely ignores

the Microsoft FAT32 license, which expressly states that the FAT32 File System

Specification is a "Microsoft specification" that is "owned by Microsoft."  A423.

**E.    The District Court Correctly Concluded That HP's Snapfish Service Is A "Combination, Hybrid Or Aggregation" That Incorporates Or Uses A Microsoft Offering**

The district court correctly concluded that HP's Snapfish digital photo

service qualifies as a "Microsoft Product" in much the same way as HP's other

Accused Products.  As the district court ruled, Snapfish employs Microsoft's

ActiveX technology to enable the uploading of images and photos.  A14; A520

(¶5).  The Microsoft ActiveX software framework, therefore, is a "combination"

with HP Snapfish within the meaning of Section 1.8 of the Microsoft Settlement.

A14.

PDIC's only merits-based challenges on appeal are that the district court

ignored the word "primary" in the declaration of Mr. Sato filed in support of HP's

summary judgment motion, and that "Snapfish implementations that utilize Apple,

Linux, or non-Internet browser technology" cannot be viewed as licensed.  PDIC

Br. at 51-52.  But PDIC did not make these arguments in its answering brief on

summary judgment—indeed, PDIC's answering brief contains no arguments

whatsoever specific to Snapfish.  A721-750.  In PDIC's Local Rule 56.1 Response

to HP's undisputed material facts related to Snapfish, PDIC offered no facts to

contest the unrefuted testimony of HP's witness; rather, PDIC's response was

limited to meritless, boilerplate objections.  A761-762.  Thus, PDIC has waived the substantive arguments made in its opening brief concerning Snapfish.  *See Sage Products, Inc*., 126 F.3d at 1426; *Golden Bridge Tech., Inc*., 527 F.3d at 1322.

Even if PDIC had not waived these arguments, they are meritless.  There is no record evidence of multiple "implementations" of Snapfish; rather, HP's knowledgeable witness testified to a single Snapfish "service."  A519-21 (¶¶2, 3, 9).  And the record is undisputed that Snapfish "uses or incorporates" Microsoft ActiveX technology, regardless whether that technology is always used in the operation of Snapfish by end users.  A520 (¶5).  And PDIC does not even address the many other alternative grounds for affirmance of the district court's ruling with respect to Snapfish, including its use of Microsoft Windows servers to run supporting infrastructure (A520 (¶4)), Snapfish's use in combination with Microsoft Windows XP Print Wizard (A520 (¶6)), HP's use of the Microsoft Software Development Kit ("SDK") to create Snapfish XP Print (A520 (¶6); A575-82) and HP's use of the Microsoft Windows Image Acquisition SDK to create HP Picture Mover (A521 (¶7)).

The thrust of PDIC's appeal as to Snapfish is the argument that PDIC asked for and was purportedly denied discovery related to Snapfish's combination with Microsoft ActiveX technology.  PDIC Br. 51.  On the contrary, PDIC failed to seek discovery about Snapfish at all, including failing to notice or take any

depositions of witnesses knowledgeable about Snapfish.  A524-535 (¶16).  This is

why PDIC's Rule 56(d) affidavit stops short of explaining "what effort affiant had

made to obtain [the facts sought to be obtained]" and "why the affiant was

unsuccessful in those efforts" under the third and fourth prongs of the test set forth

in *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422

(2d Cir. 1989).  PDIC made no effort to obtain any facts relating to Snapfish, so

any lack of success it had was a problem of PDIC's own making.

For all of these reasons, the district court's ruling with respect to Snapfish

was correct and should be affirmed.

## III.  PDIC HAS NOT IDENTIFIED ANY ERROR WITH RESPECT TO THE DISTRICT COURT'S TREATMENT OF EXTRINSIC EVIDENCE

Unable to demonstrate that the district court erred in interpreting the plain

language of the Microsoft Settlement, PDIC contends that the district court either

improperly overlooked or credited certain of the extrinsic evidence PDIC

submitted with its opposition brief.  None of PDIC's extrinsic evidence arguments

has any merit.

### A.    PDIC's Extrinsic Evidence Arguments Are Vague, Ambiguous, And Contrary To Washington Law

The district court found that because "the plain and ordinary meaning of the

words in the Microsoft Settlement is unambiguous and broad," there was "no

reason to peer behind the [Microsoft Settlement] itself in search of the subjective

purposes of the parties." A11. That conclusion was correct under applicable Washington law. *See, e.g., Hearst Communications, Inc., et al. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) ("[w]hen interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used.").

PDIC contends that the district court "misapplied [sic] intent of the parties" and that "PDIC's proposed extrinsic evidence was admissible." PDIC Br. 45, 48. But PDIC has failed to specifically identify the extrinsic evidence that it contends the district court improperly overlooked. PDIC's argument should be rejected for that reason alone. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-1320 (Fed. Cir. 2006) (noting "settled appellate rule" that issue raised in opening brief but unaccompanied by developed argument deemed waived since "a skeletal 'argument,' really nothing more than an assertion, does not preserve a claim" (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991))); *Becton Dickinson & Co. v. C.R. Bard, Inc*., 922 F.2d 792, 800 (Fed. Cir. 1990) ("We see no reason to depart from the sound practice that an issue not raised by an appellant in its opening brief ... is waived" and declining to consider issue addressed with a "cursory argument" in reply brief).

To the extent PDIC contends that the district court should have accepted the statements in the declaration of its attorney Michael Botts (the only evidence PDIC

submitted regarding Microsoft's and PDIC's alleged intent), its argument must be rejected. The district court properly found the Botts declaration irrelevant under Washington law because the Microsoft Settlement is unambiguous. A11, citing *Hearst Commc'ns, Inc.* 115 P.3d at 267 ("Washington courts should not consider the subjective intent of the contracting parties 'unless the entirety of the agreement clearly demonstrates an intent contrary to the one suggested by giving words 'their ordinary, usual, and popular meaning.'").

The district court also was correct in refusing to accept the Botts declaration because it contradicts the plain language of the Microsoft Settlement. Specifically, Mr. Botts testified that the Microsoft Settlement was intended to extend only to third-party products that include a Microsoft Offering that has a nexus to the asserted patents, such as where the functionalities or components accused of infringing PDIC's patents use a Microsoft product. A678 (¶8) ("Counsel to the parties agreed during the call that lawsuits against a third party are proper if the infringement contentions can be asserted without the use of a Microsoft product to satisfy a claim element."). The district court correctly observed that the Microsoft Settlement does not include such a nexus requirement. A11. Consequently, because the Botts declaration contradicts the plain meaning of the Microsoft Settlement, it was inadmissible under settled Washington law. *Hearst*, 115 P. 3d at 267 (extrinsic evidence cannot be used to "'vary, contradict or modify the written

word'") (internal citations omitted); *see also Hulbert v. Port of Everet*t, 245 P.3d 779, 784 ("extrinsic evidence of a party's subjective, unilateral intent as to the contract's meaning is not admissible") (internal citations omitted).

In addition, the Botts declaration does not even address the meaning of "aggregation" or "Offerings," which are the terms PDIC now contends are ambiguous and therefore require resort to extrinsic evidence. A676-678. None of the other extrinsic evidence submitted to the district court by PDIC sheds any light on the meaning of the terms that PDIC now claims are ambiguous either. A662-675; A694-712. Accordingly, even if it were admissible and could have been considered by the district court for the purpose PDIC advances (which it was not), neither the Botts declaration nor any of the other extrinsic evidence PDIC submitted in opposition to the motion would help in resolving the purported disputes identified by PDIC.

The rest of the arguments in Section III.E of PDIC's brief are based on the mistaken assertion that the Accused Products are "merely Microsoft-compliant" and purportedly do not incorporate or use any "Microsoft Offerings," or they merely rehash PDIC's contention that the district court erred in its interpretation of "Offering" and "aggregation." As shown in Section II, *supra*, the former assertion is directly refuted by the evidence of record and the district court's ruling that the Accused Products "incorporate or use" Microsoft .cat files and the FAT32 File

-43-

System, and thus are combinations and/or aggregations within the meaning of the Microsoft Settlement.  A13-15.  The latter assertion is wrong for all the reasons set forth in Section II, *supra*.  Moreover, PDIC asserts for the first time in its appeal brief that the terms "Offerings" and "aggregation" are ambiguous and subject to dispute.  PDIC Br. 46-48.  In opposing summary judgment, PDIC did not contend that these particular terms, the phrase "aggregation that incorporates or uses any [Microsoft] Offering," or any other portion of the Microsoft Settlement were unclear.  To the contrary, PDIC asserted that the Microsoft Settlement is "not ambiguous" (A732-33), uses "plain language" (A728), and "leaves nothing to imagination" (*id.*).

### B.    The District Court Did Not "Misapply" Extrinsic Evidence

The district court did not "misapply" the extrinsic evidence submitted by PDIC.  PDIC Br. 48-50.  As explained above in Section III.A, the district court did not rely on extrinsic evidence at all.  It granted summary judgment based on the plain and unambiguous language in the Microsoft Settlement.

To support its argument, PDIC relies solely on a footnote in which the district court observed that its reading of the broad and unambiguous language in the Microsoft Settlement was consistent with statements made by Microsoft in one of the summary judgment exhibits submitted to the court by PDIC.  *See* A11 at n.2 (citing Microsoft comment that it did not want to "hear from PDIC again, 'either

directly or indirectly (e.g., through an indemnification claim from one of our customers'")).  PDIC cannot dispute that counsel for Microsoft made the statement recited by the district court.  Indeed, PDIC itself has argued that all Microsoft wanted was "to not be sued by PDIC ever again, and to not be joined in any suit by its customers."  *See e.g.* A734.

Nor can PDIC credibly contend that neither Defendant was "a Microsoft customer, supplier, licensee, or end user" (PDIC Br. 4, 49).  PDIC's unsupported assertion is directly contrary to the evidence before the district court.  *See, e.g.,* A495-96 (¶4) ("FUJIFILM has been a customer and business partner of Microsoft Corporation for many years and includes Microsoft technology within many FUJIFILM products sold in the United States")); A503 (¶¶4-5), A508 (¶¶4-5), A514 (¶¶4-5).  Finally, the declaration submitted by Mr. Botts does not in any way undermine the district court's reasoning.  As discussed in Section III.A, *supra*, the Botts declaration is irrelevant and inadmissible because it purports to describe the parties' "intent" in a manner that directly contradicts the plain language of the Microsoft Settlement.  A11; *Hearst Communications, Inc., et al.*, 115 P.3d at 267. PDIC obviously wishes in hindsight that it had not granted Microsoft such a broad license, but that desire cannot trump the plain language of the Microsoft Settlement and its application to the undisputed facts here.

**IV.    DEFENDANTS SUBMITTED EVIDENCE OF ADDITIONAL MICROSOFT OFFERINGS THAT ARE INCORPORATED OR USED BY THE ACCUSED PRODUCTS, WHICH PROVIDE ALTERNATIVE GROUNDS FOR AFFIRMANCE**

In addition to Microsoft .cat files and the Microsoft FAT32 File System, Defendants also presented undisputed evidence that the Accused Products incorporate other Microsoft Offerings.  Specifically, FNA presented evidence that its Accused Products incorporate and use Microsoft executable software files related to necessary USB drivers that allow FUJIFILM cameras to connect with Microsoft PCs.  A397 (¶7); A497-98 (¶¶9-13).  FNA also presented evidence that each of its Accused Products incorporates and uses a Microsoft Windows Media Player, which is a Microsoft software program that is included without alteration on a CD-ROM that in turn is included with each FUJIFILM camera sold by FNA.  A398 (¶9); A499 (¶14).  The Microsoft Windows Media player can be installed on any PC and used to view still images or video taken with an FNA accused camera.  A499 (¶14).  Likewise, HP presented evidence that HP employees create software drivers for HP printers using the Microsoft SDK.  A504 (¶7); A515 (¶6).  The Microsoft SDK allows HP to develop printer software that works with Windows operating systems.  *Id.*

PDIC did not identify any genuine issues of fact with respect to FNA's arguments that the Accused Products incorporate and use Microsoft executable software files for USB drivers and a Microsoft Windows Media Player.  PDIC did

not address FNA's Windows Media Player argument at all, either in its opposition brief or the expert declarations attached to that brief, and provided no substantive response to FNA's Statement of Facts.  A721-750; A694-712; A662-672; A713-718 (¶9).  Thus, summary judgment on this argument was warranted.  *Kraft v. City of New York*, 696 F. Supp. 2d 403, 424-255 (S.D.N.Y 2010) (summary judgment granted where plaintiff offered insufficient evidence and only "bald assertions" in support of claim).  With respect to FNA's evidence that its products incorporate Microsoft software files for USB drivers (A639-40), PDIC argued only that the code and files pertaining to the drivers are proprietary to FNA and that the files operate on a PC.  A743.  Those arguments are meritless.  That the source code may be proprietary to FNA does not alter the fact that the drivers incorporate and use Microsoft technology.  Further, even if the drivers execute on a PC rather than on an FNA camera, each of the Accused Products would still be an "aggregation" or "combination" that uses a Microsoft "Offering."

Nor did PDIC identify any genuine issues of fact with respect to HP's argument that HP creates software drivers using the Microsoft SDK.  The district court did not reach these issues because its conclusions regarding Microsoft .cat files and the Microsoft FAT32 File System were more than sufficient to support summary judgment.  To the extent this Court finds it necessary to reach these issues, FNA's evidence regarding Microsoft executable software files for USB

drivers and a Microsoft Windows Media Player and HP's evidence regarding the Microsoft SDK provide alternative grounds for this Court to affirm the district court's ruling.  *See, e.g., Glaxo Group Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) ("[A]n appellate court may affirm a judgment of a district court on any ground the law and the record will support so long as that ground would not expand the relief granted"); *King Pharmaceuticals, Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1278-79 (Fed. Cir. 2010) (affirming finding of invalidity on alternative ground, stating that "as an appellate court, we are not limited to a district court's stated reasons for invalidating claims and can affirm a grant of summary judgment on any ground supported by the record and adequately raised below").

## V.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING PDIC'S REQUEST FOR ADDITIONAL DISCOVERY

PDIC's argument to reverse the district court's summary judgment based upon a claimed need for discovery fails for numerous reasons:  (1) PDIC had a full and fair opportunity to conduct discovery on Defendants' Accused Products and their license defense; (2) PDIC did not identify and has still not identified how further discovery could have led to the identification of genuine issues of fact for trial; (3) the district court had all the necessary facts at its disposal to make the correct determination on Defendants' license defense; and (4) any purported lack of notice of the license defense is meritless, particularly when PDIC was not

diligent in pursuing discovery, PDIC had full notice of the defense, and PDIC

negotiated the Microsoft Settlement that formed the basis for the defense.

### A.    This Court Reviews The District Court's Determination Under Rule 56(d) For An Abuse Of Discretion

This Court reviews the district court's determination under Federal Rule of

Civil Procedure 56(d) under the law of the regional circuit.  PDIC Br. 27.  The

Second Circuit places a "significant burden" on a party who seeks to avoid

summary judgment by requesting discovery, and employs the deferential "abuse of

discretion" standard to review a district court's denial of a Rule 56(d) request.

*Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1364 (Fed. Cir. 2008).

A court can reject a request for discovery, even if properly and timely made

through a Rule 56(d) affidavit, if the court deems the request to be based on

"speculation as to what potentially could be discovered," because "Rule 56[d] is

not a shield against all summary judgment motions."  *Paddington Partners v.*

*Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (citations omitted).  Indeed, "[a]n

opposing party's mere hope that further evidence may develop prior to trial is an

insufficient basis upon which to justify the denial of the motion."  *Serdarevic*, 532

F.3d at 1364 (citations omitted).  Furthermore, several courts have affirmed denials

of Rule 56(d) requests where, as here, the facts the nonmoving party hoped to

obtain from discovery would not create a genuine issue of material fact sufficient

to defeat summary judgment.  *See, e.g., Muller v. Anderson*, 501 F. App'x 81, 85

(2d Cir. 2012); *Sage Realty Corp. v. Ins. Co. of N. Am.*, 34 F.3d 124, 128 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir. 1989).

Under this standard, PDIC does not and cannot show that the district court abused its discretion in granting summary judgment over PDIC's request for additional discovery.

> **B.    PDIC Was Provided A Full And Fair Opportunity To Conduct Discovery Into The Accused Products And Defendants' License Defense**

PDIC falsely claims the district court granted summary judgment "without allowing any discovery to PDIC."  PDIC Br. 28.  On the contrary, Defendants brought their summary judgment motion in April 2014 following the close of fact discovery two months earlier, in February 2014.  During the more than two years of fact discovery while the case was pending in the Southern District of New York (in addition to discovery that took place before the case was transferred), PDIC received voluminous information about the Accused Products, and specifically about the incorporation in and use of Microsoft technology by those products.  For example, PDIC had access to the products themselves, which display the "Certified for Windows®" and "Designed for Microsoft® Windows®" logos on the packaging and contain Microsoft ".cat" software files on the CDs shipped with those products.  A497-98 (¶¶ 8-12); A419 (¶¶ 9-10); A435-65; A503-04 (¶6);

A508-09 (¶5). Starting in mid-2011, FNA and HP also produced numerous documents detailing the use in the Accused Products of Microsoft software and technology. A418-19 (¶¶ 8-9); A524(¶ 13). PDIC also deposed multiple HP engineers in January and February 2014—nearly seven months after PDIC signed the Microsoft Settlement and three months after PDIC was provided notice of Defendants' license defense based on the Microsoft Settlement (A524 (¶15)), so PDIC had every incentive to question these engineers about Defendants' incorporation of Microsoft technology into the HP Accused Products. Moreover, PDIC chose not to seek depositions of any of the three witnesses that FNA designated as having knowledge of the structure, function, and operation of the Accused Products (which encompasses use of Microsoft technology). Further, in February 2014, PDIC conducted a Rule 30(b)(6) deposition of FNA that covered a broad range of topics specified by PDIC, during which FNA's corporate designees responded to questions to the full extent of FNA's knowledge. PDIC has not identified any reason why further discovery of FNA would have produced additional information to support PDIC's opposition to Defendants' motion for summary judgment.

Thus, this case is the opposite of the *Miller v. Wolpoff & Abramson LLP* and *Sutera v. Schering Corp.* cases cited in PDIC's brief. PDIC Br. 27, citing *Miller v. Wolpoff & Abramson LLP*, 321 F.3d 292, 303-04 (2d Cir. 2003) and *Sutera v.*

*Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995).  In *Miller*, the Second Circuit found

that the grant of summary judgment was "premature" where it occurred "before

any discovery was conducted."  321 F.3d at 307.  Likewise, as PDIC itself

acknowledges, in *Sutera* the Second Circuit held that summary judgment was

premature where it "was entered before any discovery had taken place."  PDIC Br.

27, citing *Sutera*, 73 F.3d at 18; *see also Seneca Beverage Corp. v Healthnow New*

*York, Inc*., 200 F.App'x 25, 27 (2d Cir. 2006).  In contrast to those cases, PDIC

had the full and fair opportunity to conduct discovery for more than two years.

PDIC also claims incorrectly that Defendants "never raised the license

defense" until PDIC was "foreclosed from conducting any discovery" related to

that defense.  PDIC Br. 28.  On the contrary, PDIC was on notice of the use and

inclusion of Microsoft technology in the Accused Products and Defendants'

license defense long before the close of fact discovery, as the record demonstrates:

- In May 2010, HP answered PDIC's First Amended Complaint,

asserting the defense of express license, patent exhaustion and/or implied license.

A158 (¶59).  Thus, PDIC is not correct that "neither Defendant had pled a license

defense prior to the close of discovery."  PDIC Br. at 28.

- In April 2011 (nearly three years before fact discovery closed), PDIC

served infringement contentions, claiming to have analyzed the Accused Products.

Each of these products displays the "Certified for Windows®" or "Designed for

Microsoft® Windows®" logos on the box, and Microsoft ".cat" software files are on every CD shipped with those products. A419 (¶ 9); A497-99 (¶ 8); A503-504 (¶6); A508-509 (¶5); A514(¶5). If PDIC had actually inspected the Accused Products as it represented, it would have been evident to PDIC that the products use and incorporate Microsoft technology.

- Starting in mid-2011, both FNA and HP produced documentation detailing how the Accused Products incorporate and use Microsoft technology. For example, FNA produced documentation of the Microsoft WHQL Certification of the Accused Products and Users Manuals for the Accused Products that described the FinePix Viewer included with the cameras which included Microsoft Windows Media Player, in addition to making available source code for the Accused Products and product samples showing the "Certified for Windows®" logo on each box and including CDs with Microsoft .cat files. A419 (¶¶ 8-11); A428-34; A451-79. For its part, HP produced product manuals, guides and other reference documents for each of its Accused Products, which demonstrated how the Accused Products incorporated Microsoft software and technology. A524 (¶¶13-14); A595-598; A612-614. In all, HP produced more than 420,000 pages of technical documents and source code, including more than 230 documents that refer to HP's use of the Microsoft FAT32 file system. A781; A785 (¶2).

- In September 2011, HP made its Accused Products—all of which use and incorporate Microsoft software and technology—available for inspection by PDIC.  A524 (¶14).

- In June 2013, FNA produced for inspection its source code for the accused FNA products, which clearly shows the incorporation and use of the Microsoft drivers and Microsoft FAT32 file format.  A419 (¶11).

- In October 2013, HP informed PDIC that HP was pursuing a license defense as to all HP accused products based on the Microsoft Settlement.  A524 (¶15).

- In November 2013, Defendants questioned PDIC's corporate representative extensively about the Microsoft Settlement, including whether PDIC believed the agreement covered the accused products.  A541-55.

- In December 2013, HP served its Supplemental Disclosure Statement, identifying Microsoft as having knowledge of the "[d]esign, structure, function and operation of accused HP products that incorporates or uses Microsoft technology; licensing agreement between PDIC and Microsoft."  A589.

- In early January 2014, HP served supplemental responses to PDIC's interrogatories, stating:  "Additionally, HP is licensed, and all of PDIC's claims against HP have been licensed, released and fall under a covenant not to sue, by

virtue of a Settlement and License Agreement entered into by PDIC and Microsoft Corporation on or about June 28, 2013." A594-95.

Moreover, PDIC itself negotiated and signed the Microsoft Settlement, so it was fully aware of the scope of that Settlement. Simply put, PDIC had at its disposal all of the information it needed to evaluate Defendants' license defense before PDIC's own litigation counsel negotiated the Settlement in mid-2013, and certainly before fact discovery closed in February 2014. This Court should not reverse the district court's well-reasoned summary judgment order simply because PDIC failed to undertake the discovery and analysis it now claims to have needed.

Indeed, with full notice of the incorporation of Microsoft software and technology in the Accused Products, PDIC did not question either FNA or HP witnesses about any Microsoft-related issues. Further, PDIC deposed three of the four HP witnesses who submitted affidavits in support of Defendants' summary judgment motion, yet PDIC did not ask any one of them about Microsoft, the incorporation of Microsoft technology into HP's products, or anything else related to the Microsoft Settlement—even when the deponents volunteered to PDIC that certain of HP's products incorporate Microsoft technology. A603-604; A609. PDIC did not depose the fourth HP declarant, who was designated to speak about the HP Snapfish service. PDIC did not seek to depose anyone about HP Snapfish,

nor did PDIC serve discovery or deposition topics to HP regarding Snapfish.
A524-535 (¶16).

What PDIC asked of the district court (and asks of this Court on appeal) is a
"do-over" on discovery so that it can ask the questions it should have asked when it
had the opportunity.  This reasoning does not justify vacating summary judgment.
*See, e.g., Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1328-29
(Fed. Cir. 2013) (district court did not abuse its discretion in denying Rule 56(d)
request when patentee had "access to extensive information," including reviewing
the accused infringer's products); *Springs Window Fashions LP v. Novo Industries,
L.P.*, 323 F.3d 989, 998 (Fed. Cir. 2003) (lack of diligence in pursuing discovery
did not merit overturning summary judgment grant); *see also Spectra Corp. v.
Lutz*, 839 F.2d 1579, 1581 (Fed. Cir. 1988) (affirming denial of Rule 56(d) request
when patentee was "not deprived a reasonable opportunity to take discovery").

### C.  The Facts Concerning The Incorporation And Use Of Microsoft Technology In The Accused Products Were Undisputed

PDIC had no need for additional discovery because the undisputed facts
fully supported the district court's grant of summary judgment.  Yet PDIC
contends the district court committed reversible error because it "never mentioned
the Rule 56(d) affidavit or any issues of lack of discovery in its decision."  PDIC
Br. 13, 16, 28.  An implicit denial of a Rule 56(d) request is not an abuse of
discretion, particularly where, as here, the additional discovery would not have

prevented summary judgment. *Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir.

2004); *cf. Qualls v. Blue Cross of Cal., Inc*., 22 F.3d 839, 844 (9th Cir.1994).

Under the district court's correct reading of the Microsoft Settlement, the material

facts regarding the Accused Products were undisputed, and no amount of further

discovery would have allowed PDIC to avoid entry of summary judgment.

Moreover, PDIC did not set forth the requisite need for additional discovery

that would merit denial of summary judgment.  For starters, PDIC's Rule 56(d)

affidavit did not identify any facts that were "reasonably expected to create a

genuine issue of material fact" under the second prong of the test set forth in

*Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422

(2d Cir. 1989) (facts non-moving party hoped to obtain from discovery would not

create a genuine issue of material fact).  Rather, PDIC's Rule 56(d) affidavit

merely quibbled with the undisputed facts presented in the FNA and HP

declarations and disputed the legal conclusion flowing from those undisputed

facts—namely, that the Accused Products were covered by the Microsoft

Settlement.  A713-718; A753-62.  PDIC's Rule 56(d) affidavit also failed to satisfy

the third and fourth prongs of the *Hudson River* test, because the affidavit did not

explain (1) "what effort affiant had made to obtain [the facts sought to be

obtained]" (in part because PDIC already had deposed several of the declarants)

and (2) "why the affiant was unsuccessful in those efforts" (because PDIC failed to ask the questions of the witnesses at their depositions). *Id*.

PDIC speculates about what the additional discovery may show, claiming that "all information relating to Defendants' devices [as] aggregations of Microsoft Offerings was in Defendants' hands." PDIC Br. 15. But as discussed above, PDIC's premise—that it had no discovery about Defendants' products—is false. PDIC further speculates that Defendants must not have fulfilled their Federal Rule of Civil Procedure 34 obligations, despite acknowledging that Defendants produced hundreds of documents related to the incorporation of Microsoft technology in the Accused Products, including documents that describe Defendants' incorporation and use of Microsoft technology. PDIC Br. 31-32; A781. *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981) (bare assertions that "the evidence supporting a plaintiff's allegations is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56[d]." ) (citations omitted).

### D. Defendants' Response To PDIC's Rule 56(d) Affidavit Does Not Prove PDIC's Need For Additional Discovery

Rather than excuse its own lack of diligence in pursuing discovery during the fact discovery period, PDIC points to Defendants' response to PDIC's Rule 56(d) affidavit as proving the "need" for additional discovery. PDIC Br. 31. PDIC argues that the "hundreds of thousands" of documents produced by Defendants,

including supplemental discovery responses and the proffering of witnesses before the close of fact discovery, shows that the record somehow contains "only some" of the relevant documents and information. PDIC Br. 31. Yet again, PDIC only speculates about what additional discovery might show, which is an insufficient basis upon which to vacate a summary judgment order.

PDIC also incorrectly points to HP's proffer of supplemental interrogatory responses and deponents "in the last days of discovery" (PDIC Br. 32) as justification for reversing summary judgment, citing the inapposite decision in *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995). In *Meloff*, the movant filed for summary judgment less than four months after suit was filed and before the non-movant had a chance to take any depositions. *Id.* at 374. The non-movant also received interrogatory responses "just two days" before her opposition was due. *Id.* This is clearly not the case here, where the litigation was pending for nearly four years before Defendants moved for summary judgment, and PDIC had more than ample time to conduct relevant discovery.

This case also is not like *Baron Services, Inc. v. Media Weather Innovations LLC*, 717 F.3d 907 (Fed. Cir. 2013). *See* PDIC Br. 33. In *Baron*, the requested discovery was unavailable to the non-movant despite repeated requests for it. And *Baron* was decided under Eleventh Circuit law, which does not require an affidavit under Rule 56(d). *Id.* at 914. In contrast, PDIC had been in possession of the facts

relevant to Defendants' license defense for months, and had ample opportunity to test the bases of Defendants' defense, yet failed to ask deposition questions or pursue any discovery related to the incorporation of Microsoft technology in the Accused Products. PDIC's feigned ignorance about how the Accused Products incorporate Microsoft technology is particularly surprising given that PDIC and its counsel negotiated the Microsoft Settlement that created Defendants' license defense.

PDIC's request for further discovery amounted to nothing more than speculation and wishful thinking. Thus, the district court did not abuse its discretion in denying PDIC's request for additional discovery before granting Defendants' motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the judgment in favor of HP and FNA should be affirmed.


Dated:  September 9, 2015


By: */s/ Steven J. Routh*
    Steven J. Routh
    Sten A. Jensen
    ORRICK, HERRINGTON &
    SUTCLIFFE LLP
    1152 15th Street, NW
    Washington, DC 20005-1706
    202.339.8500

    *Attorneys for Defendant-Appellee*
    *FUJIFILM North America*
    *Corporation*

By: */s/ Sean C. Cunningham*
    Sean C. Cunningham
    Erin P. Gibson
    Stanley J. Panikowski
    David R. Knudson
    DLA PIPER LLP (US)
    401 B Street, Suite 1700
    San Diego, CA 92101-4297
    619.699.2700

    Brian Erickson
    DLA PIPER LLP (US)
    401 Congress Avenue, Suite 2500
    Austin, TX  78701-3799
    512.457.7059

    *Attorneys for Defendant-Appellee*
    *Hewlett-Packard Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2015, the foregoing RESPONSE

BRIEF OF APPELLEES HEWLETT-PACKARD COMPANY AND FUJIFILM

NORTH AMERICA CORPORATION was served by this Court's CM/ECF

system on Counsel of Record.

By: */s/ Sean C. Cunningham*
Sean C. Cunningham

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

☒      The brief contains 13,646 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐      The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted    by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒      The brief has been prepared in a proportionally spaced typeface in Times New Roman font size 14, or

☐      The brief has been prepared in a monospaced typeface in Times New Roman font size 14.

Dated:  September 9, 2015

By: */s/ Sean C. Cunningham*
        Sean C. Cunningham